E. P. LINDLEY, EXECUTOR, Appellant, *v.* T. P. RUSSELL ET AL., Respondents.

### November 11, 1884.

1. EQUITY — PLEADING — MULTIFARIOUSNESS. — A bill in equity is not multifarious unless distinct and independent matters are united therein.
2. —— INJUNCTION. — If an action at law gives an unfair advantage to the adverse party, equity will interfere and grant relief.
3. —— The plaintiff being entitled to a cancellation of an instrument of writing, equity will interfere to restrain a proceeding in replevin for its pos-

session, where its possession by the defendant would work a fraud on the plaintiff or those for whom he is acting as trustee.

APPEAL from the St. Louis Circuit Court, LINDLEY, J. *Reversed and remanded.*

JAMES J. LINDLEY and HENRY W. BOND, for the appellant: Injunction will issue whenever a suit at law affords "an unfair advantage" to adverse party. — 57 Mo. 422; 51 Mo. 100.

CHARLES F. JOY and JOHN A. LEWIS for the respondents: The bill is multifarious. — *Mole* v. *Smith*, Jac. Rep. 490–494; *Bobb* v. *Bobb*, 8 Mo. App. 257; *Stallcup* v. *Garner*, 26 Mo. 72; *Robinson* v. *Rice*, 20 Mo. 229; *Maybury* v. *McClurg*, 51 Mo. 256; *Clark* v. *Cov. Mut. L. Ins. Co.*, 52 Mo. 272. The petition is also bad for the reason that two causes of action are not separately stated. —*Doan* v. *Holly*, 25 Mo. 357. "No relief will be granted in equity where the complainant has a complete and adequate remedy at law." — *Janney* v. *Spedden*, 38 Mo. 395; *Arnold v. Clepper* 24 Mo. 273; *Camp* v. *Matheson*, 30 Ga. 170; Harkins' Appeal, 78 Pa. St. 196; *Whittelsey* v. *Hartford*, 23 Conn. 421.

BAKEWELL, J., delivered the opinion of the court.

The petition alleges the following facts: Mary A. Russel died on the 12th of October, 1883. By her last will, which was duly probated on the 13th of October, 1883, she named plaintiff as her executor. Letters testamentary were issued to plaintiff on the 26th of October, 1883. Certified copies of the will and letters are filed as exhibits with the petition. In addition to a small amount of personalty, which will be applied to pay legacies, about which there is no dispute, the rest of the property of the deceased was a farm of two hundred and thirty-six acres in Moniteau County, worth $10,000, and a lot on Grand Avenue, St. Louis, on which is erected a livery stable and other improvements, the whole of this last lot of ground being worth $15,000.

The will uses the following language as to these two tracts of land : " I devise to my executor Edward P. Lindley, hereinafter appointed, my farm in Moniteau County, Missouri, containing about two hundred and thirty-six acres ; to him and his heirs, in trust however for the sole and separate use, benefit, and behoof of my niece Bella Gibson, free and separate from any interest or control of her husband, during her life, and at her death to the heirs of her body living, and if she die without heirs of her body living then to my brother Charles F. Christian, and his heirs absolutely.

" I further devise to my said executor, a certain lot of ground in block 2290 in the city of St. Louis, fronting sixty-three feet two inches on Grand Avenue, by a depth of one hundred and sixty-seven feet, and whereas said lot has cost me about $4,000, and I have also lately executed a mortgage thereon for the sum of $2,000 ; and whereas my husband has expended money in erecting improvements thereon, I direct my said executor that upon the payment by my husband of a certain mortgage for the sum of $3,000, now resting upon my said farm, and the payment of said mortgage upon said lot, at or before the time said mortgage shall become due and payable, then my said trustee and executor shall convey by deed said lot to my said husband, or to whom he may direct, but in case my husband shall fail or refuse to pay off said mortgages, or to pay the amount sufficient to release the same to my executor at or before the same shall become due ; then my executor shall proceed to sell said lot as soon as he may see fit, and shall take from the proceeds thereof the sum of $4,000 ; also sufficient to pay off said $2,000 mortgage in addition to this ; and the balance of the proceeds he shall pay to my husband or to whom he may direct. From the proceeds of such sale or payment by my husband, my executor shall pay off and release the mortgage upon my said farm, and the balance, if any, shall pay to my niece Bella

Gibson ; and if my husband fail or refuse to pay the taxes upon said lot, my executor may proceed in the same manner with respect to said lot as he is directed in the case o f said mortgages by my husband."

Plaintiff is informed and believes that the mortgage on the Grand Avenue lot is to secure an indebtedness, not of $2,000 as the will recites, but of over $6,000. This intrinsic fact, he says, presents such difficulties of interpretation as to the proper duties of the executor therein, that he is compelled for his own safety and for the protection of the interests of the residuary devisees to seek a construction of said will in the matter of the proper amount required by said will to be paid by defendant T. P. Russell, before said lot shall be conveyed to him, or in case of his default as to such payment, the proper amount to be deducted by plaintiff in selling said lot as he is directed under said will in the event of non-payment by said T. P. Russell of the amount therein charged to him, and for full and specific directions to plaintiff in the discharge of his duties as executor of said will.

In January, 1883, before the execution of the will, the testatrix, in whom the title to the Grand Avenue lot was vested subject to a mortgage of about $2,000 for unpaid purchase-money, was requested by defendant T. P. Russell, her husband, to convey this lot to defendant W. J. Russell, a son of T. P. Russell by a former wife. This request was accompanied by a false representation by T. P. Russell to his wife that, unless she would make such a conveyance, she would lose title to the lot, by its being sold to pay the mortgage aforesaid and liens for unfinished improvements, and was made upon a pretense of raising money to complete these improvements, and that a new loan could thus be effected whereby the title. to the lot would be protected, and its ownership saved to Mrs. Russell.

In furtherance of this fraudulent scheme to get the title out of his wife, T. P. Russell took a title investigator or

draughtsman and a notary public out to his home with a blank deed to said lot to his son and a deed from the son over to the father of even date therewith, for one-half of the same lot, and in the presence of said title investigator, plaintiff's testatrix, signed conjointly with her husband and acknowledged the said deed to his son, Wm. J. Russell, and after signing and acknowledging said deeds, and while holding them in her possession undelivered, said testatrix inquired of the draughtsman or notary public whether it would prejudice her title to said property if these deeds were delivered to her husband, T. P. Russell, and should by him be recorded, and upon a reply made by this person that the title to said property might be impaired in such an event, she at once answered: " I will not deliver these deeds — they shall not go out of my possession to any one," and thereupon the arrangement was immediately broken off and ended.

No valuable consideration was paid, or proposed to be paid by T. P. Russell or by W. J. Russell, or either of them, for these deeds, and plaintiff is informed and believes that whatever incumbrance had been placed on the Grand Avenue lot, was at the instance and for the sole use of T. P. Russell.

Testatrix was then suffering from the acute and incurable disease of which she shortly afterwards died, and her husband greatly aggravated her suffering at this period by persecuting and importuning her to give him possession of these deeds. He searched her drawers, trunks, and private papers to find them. Testatrix had, however, placed them with a third person for safe keeping; with this person the deeds remained until brought to plaintiff by Dr. McCandless together with the will in question, shortly after the death of testatrix.

Defendant W. J. Russell knowing these facts, and that the title to the Grand Avenue lot never passed out of the testatrix until the devise to plaintiff coupled with the trust

under the will, has instituted a replevin suit in his own name against plaintiff, and obtained a delivery order for said deed.

That suit was brought at the instigation of T. P. Russell, with the fraudulent purpose on his part to obtain possession of said deed and place the same on record, and to dispose of the property described in the deed to an innocent purchaser or mortgagee so as to put it out of plaintiff's power to carry out the trust described in the deed.

This replevin suit is brought against plaintiff in his individual capacity, for the fraudulent purpose, as plaintiff is informed and believes, of evading the statutory provision which would render W. J. and T. P. Russell incompetent to testify had the suit been against plaintiff as executor, in which capacity alone has he ever held or possessed the deed.

In that suit W. J. Russell, who is insolvent, gave bond in the sum of $2,000 only; the property to which Russell is fraudulently seeking to obtain title by means of the replevin suit is worth $15,000. If plaintiff is compelled to deliver possession of the deed on the delivery order, which is in the sheriff's hands, the estate devised to him, and the interests of the devisees, will be irreparably damaged. The deeds in question are inoperative except as clouds on the title to the land devised.

The prayer is for a construction of the will, and a definition of the powers, duties, and trusts which it imposes on plaintiff in reference to the questions submitted, and that the conflicting claims and interests of defendants in said will may be fully determined and settled; and for an injunction to restrain said Russell from prosecuting his replevin suit; and that an order be made that the deeds in question be delivered up and cancelled, as a cloud on plaintiff's title, and for general relief.

The defendants are T. P. and W. J. Russell, Charles F. Christian and Bella Gibson. Defendants Thomas P. and

William J. Russell demurred to this petition on the following grounds:—

1st. It does not state facts to constitute a cause of action against defendants by injunction. 2d. It improperly joins a cause of action against one defendant alone, to have the will construed with a cause of action against his co-defendant alone to enjoin him from prosecuting a suit. 3d. These causes of action do not separately affect all the defendants, but require separate issues and findings in reference to each defendant. 4th. The causes of action are not separately stated. 5th. There is another action, the replevin suit pending between the same parties for the same cause of action. 6th. There is a defect of parties plaintiff in that E. P. Lindley should be joined in his individual capacity.

This demurrer was sustained. Plaintiff declined to plead further and there was final judgment accordingly.

It would seem that the action at law affords an unfair advantage to the adverse party. It is suggested that the defendant in the replevin suit might apply for an additional bond. But this would only enable him to retake the deed (Rev. Stats., sect. 3851), which might meanwhile have been recorded by the Russells. If the facts alleged by plaintiff in his petition are true, he is undoubtedly entitled to a decree for the cancellation of the deed, and this would seem to be very important for the protection of the interests that he represents.

Respondents admit in their brief that "there can be no question but the executor has the right to come into equity to have the will construed, and that all the beneficiaries under the will are necessary parties to the bill." Is the bill then multifarious for joining W. J. Russell, the grantee in the undelivered deed, with the other parties interested under the will in the property described in it. A bill is multifarious where it unites several claims of a distinct and independent nature which ought to be the subjects of distinct suits ; thus improperly joining in one bill distinct and independent

matters and thereby confounding them. This is done when several distinct and independent matters are united against one defendant, or against several defendants in the same bill. The latter is strictly a misjoinder. The statute provides that any person may be a defendant who has or claims an interest in the controversy adverse to plaintiff, or who is a necessary party to a complete settlement of the question involved therein. If there is a misjoinder as to W. J. Russell, it must be because he has no connection whatever with a large portion of the case made by the petition, and therefore ought not to be made liable for the costs that may accrue in deciding that part of the case, or to be troubled with that litigation.

But on the case stated in the bill, it is difficult to see that the equitable proceeding to cancel the deed could be well prosecuted without some adjudication upon the meaning of the will.

The object of the bill is to ascertain, support, and enforce the trust created by the will as to a piece of real estate in which W. J. Russell is said to claim a one-half interest under a deed alleged to be fraudulent, and in which the other parties are interested as beneficiaries under the will. The parties all claim an interest in the same property. It is true they claim under different titles. Persons otherwise unconnected may be joined as defendants where there is a common interest among them all centering in the point in issue in the cause. *Fellows* v. *Fellows*, 4 Cow. 701. All the defendants here are not, as in that case, alleged to be parties to the same scheme of fraud. Nor would this be decisive. But the general issue as to the validity of the deed in question affects all the parties to the suit. The case is not like *Bobb* v. *Bobb* (8 Mo. App. 257), where we held the bill multifarious because the subjects of the bill were distinct pieces of property, acquired by the twenty defendants by different conveyances alleged to be fraudulent, where the grantees had no common interest, and one

deed might have been found fraudulent and another not. But even in that case, the supreme court reversed the court of appeals, and held, contrary to our ruling, that the bill was not multifarious, on the ground that the *gravamen* of the fraud or wrong in the sales, affected all the defendants.  *s. c.* 76 Mo. 419.  Here the alleged fraudulent conveyance of the land by an attempt to validate a lifeless conveyance by a fraudulent pretence of a delivery that was never made, and the alleged plot between the Russells to procure a record of the deed during a temporary possession of the paper on which it is written, for the purpose of making title to an innocent purchaser, or of clouding the title of plaintiff as trustee, affects everybody named in the bill as a party, whether plaintiff or trustee, or any of the other parties to plaintiff's bill. W. J. Russell as claiming to be a grantee of Mrs. Russell, and the others as beneficiaries under her will, having, in contingencies that may arise, each of them a greater or less interest in the land or its proceeds.

We think that the bill, though somewhat loosely drawn, states a cause of action, and that it is not bad on the ground of multifariousness or a misjoinder of parties.  We therefore reverse the judgment and remand the cause.  Judge THOMPSON concurs.  Judge LEWIS is absent.