Barrington v. Ryan.

———

ALMEDIA E. BARRINGTON, Respondent, v. WILLIAM F. RYAN, Appellant.

**St. Louis Court of Appeals, March 26, 1901.**

1. **Equity:** A CONTRACT OBTAINED BY FRAUD: SUBJECT TO CANCELLATION. The contract of plaintiff with defendant to pay him one-third of the amount of collections made by him on certain policies of insurance, having been obtained through fraud, may be cancelled by a court of equity and further litigation thereupon enjoined, as was done in this case.

2. ———: ———: CONCURRENT REMEDIES IN LAW AND IN EQUITY: REMEDY IN EQUITY, WHEN PROPER. It is not enough to oust the jurisdiction of a court of equity, that a party may have a legal remedy against another; to do that, the remedy at law must be full, complete and adequate within the meaning attached to those terms, that is, as perfect and adequate as would be the remedy in equity.

3. ———: ———: MULTIPLICITY OF SUITS. The prevention of a multiplicity of suits at law, is only cognizable in a court of equity, which, being one of the grounds of equitable relief in this case, would itself entitle plaintiff to maintain her suit in equity to cancel the contract and thereby prevent the bringing of expensive and harassing lawsuits.

Appeal from St. Louis City Circuit Court.—*Hon. James E. Withrow,* Judge.

AFFIRMED.

Barrington v. Ryan.

### STATEMENT OF THE CASE.

This is a petition for equitable relief. The material averments are that the plaintiff is a resident of the city of St. Joseph, in the State of Missouri; that her husband Charles C. Barrington died on the eighteenth of September, 1896, at which time she was the holder and beneficiary of a policy of insurance on his life for the sum of five thousand dollars, issued by the Mutual Benefit Insurance Company of Newark, New Jersey, on the eighth day of August, 1866; that in consideration of the payment by her of the annual premiums thereon until the year 1886 and in accord with a non-forfeiture system adopted by the company in 1879, the said company extended the time of the forfeiture of said policy and its full liability thereon without any further payment of premiums up to October 31, 1896; that said company kept a general office in the city of St. Louis, Missouri, containing a full record of its business transacted in this State and which also showed the issuance of said policy upon the life of plaintiff's husband, the amounts of premiums paid thereon and the fact that it was continued in full force and effect by said company until October 31, 1896; that the defendant herein has for twenty years past resided in the city of St. Louis, and for fifteen of these years was, and still is, in the employ of the said life insurance company, with access to and full knowledge of all its records and was fully aware that said policy upon the life of the plaintiff's husband was in full force and valid at the time of his death. The petition concludes, to-wit:

"That soon after the death of said Charles C. Barrington, the defendant obtained knowledge of the fact that he was dead, and on or about May 24, 1898, with full knowledge of all the facts hereinbefore stated, defendant called upon plaintiff at her residence, in the city of St. Joseph, Missouri, and repre-

senting himself to be an insurance lawyer, an expert insurance accountant and adjuster, inquired of the plaintiff whether she held any policies of insurance upon the life of her said deceased husband; plaintiff, in reply to his said inquiry produced and handed to him the policy of insurance hereinbefore mentioned, with the receipts for the premiums paid thereon, and these papers he carefully examined, and after so doing, affected to be surprised and disappointed. He said that he had hoped she held policies in the Equitable Insurance Company; that he, the defendant, had adjusted some matters with the Equitable Insurance Company; that he now had on hand several policies issued by that company which were in process of adjustment and that he might have been able to recover something for the plaintiff if she had held a policy issued by the Equitable company. Defendant further asked if there were no other premium receipts than those which the plaintiff had handed him, and upon being told there were no others, he stated that the receipts did not show the payment of premiums after the year 1886, and that inasmuch as the said Charles C. Barrington's death did not occur until the year 1896, that the policy had lapsed and that all rights thereunder, to the amount of insurance stipulated in the policy, had expired and had been forfeited to the company. Defendant had said to the plaintiff, however, that he, the defendant, had had extensive experience in insurance matters and in legal matters pertaining to insurance, and that he had at that time an office in Kansas City, Missouri, and also one in the city of St. Louis, Missouri, in both of which offices he maintained a force of clerks and assistants to aid him in the extensive business which he conducted; that the said company would not regard or consider any communication from plaintiff to said company, in reference to said insurance, but that on account of his, the defendant's, knowledge, experience and importance, said company

might regard what he would say in reference to said insurance, after he had examined their books and papers in said city of Newark, New Jersey, and notwithstanding the said policy had lapsed and that the insurance provided for therein could not be collected, yet by reason of his superior attainments, as an insurance expert, that by going to the home office of the company at Newark, New Jersey, he might possibly be able to induce the company to pay something to the plaintiff, on account of said policy in the nature of a return of a part of the premiums paid thereon, but that in no case could he succeed in collecting more than $300 or $400, and that there was little probability that he could collect that much. Defendant stated, however, that inasmuch as he then had other matters in his hands which would require him to visit the home office of the insurance companies in the east, he would be willing to undertake to collect something for the plaintiff, on account of this policy held by her, along with the other policies which he held for adjustment, and would be willing to agree that his compensation would be one-third of the amount recovered by him.

"Plaintiff states that at the time defendant called upon her she had no knowledge, information or belief that said policy was a valid and binding contract upon the company at the time of her husband's death; that she relied upon the representations then and there made by the defendant; that he was an insurance lawyer and expert accountant and insurance adjuster, and that he had an extensive experience in matters relating to insurance policies and that he conducted an extensive business of the character stated above, and that she relied implicitly upon his representations that the said policy had lapsed and was of no binding effect upon said company; that she believed all that the defendant said to her, with respect to his ability to attend to her interest in the matter, with respect

to the condition of said policy of insurance, and with respect to his undertaking to investigate and adjust the matter for her; and by reason of the statements made by the defendant and her reliance thereon, as hereinbefore set out, she was then and there by the defendant induced to sign, and did sign, and deliver to him a certain paper, purporting to be a contract, which is as follows:

"St. Joseph, Mo., May 24, 1898.

"In consideration of the services to be rendered by William F. Ryan, in securing payment to me of any and all sums due me by any and all insurance companies, I agree to pay him one-third or thirty-three and one-third per cent of all amounts recovered by him for me, or recovered by me through his assistance.

"It is understood and agreed that I am to incur no expense whatever, except the one-third, as stated above.

(Signed) "Mrs. Almedia E. Barrington."

"Plaintiff states that all the representation and statements above set out, made by the defendant to the plaintiff, when he called upon her at her home in St. Joseph, Missouri, and induced her to sign the alleged contract, as hereinbefore narrated, were false and fraudulent, and were then well known by the defendant to be false and untrue, and were made by him for the purpose of fraudulently inducing the plaintiff to make the alleged contract with him. That the facts are, that the said policy of insurance had not lapsed at the time of the death of her said husband, but that it was in full force and effect at said date, and at the time the defendant visited the plaintiff; that the defendant was not a lawyer and did not conduct an extensive business as an insurance expert, and that his pretense that a small sum might possibly be recovered from the said insurance company by way of premiums returned,

was made for the fraudulent purpose of inducing the plaintiff to employ him to collect the said policy, well knowing that the same was a legal and valid claim against the said company,

"Plaintiff further states that, at the time defendant called upon her as aforesaid, he concealed from her his connection with the St. Louis office of the said Mutual Benefit Life Insurance Company, and did not tell her of the information he possessed respecting the condition of said policy, and of her rights thereunder, but that he led the plaintiff to believe that he did not know in what companies her said husband carried insurance.

"Plaintiff further states that the said policy is valid and binding and the said company stands ready to pay plaintiff the sum of five thousand dollars due thereon, except for the interference of the defendant.

"That the defendant is now using said paper to harass and annoy this plaintiff and to prevent her from collecting said sum of five thousand dollars from said insurance company and to put her to great expense in and about the collection of said sum, and that in pursuance of his unjust, unfair and fraudulent purpose to harass and annoy this plaintiff, he is using the said paper as the basis of a suit instituted by him against this plaintiff in the State of New Jersey, wherein he has wrongfully caused to be attached the property of plaintiff in that State and now threatens to cause this plaintiff further trouble and annoyance on account of said paper which he holds, and says that he intends and will sue her, in other courts, on account of her alleged contract.

"That by the aid of said paper, he has incurred apparent obligations and been sued in this court, in which said suit a writ of attachment has been issued against him, and this plaintiff has been garnished, and put to great trouble, annoyance and expense in going from the city of St. Joseph to this city,

in and about her defense in said garnishment proceedings.

"This plaintiff has no adequate remedy at law against the defendant for said wrongs done her, nor for the wrongs which the defendant threatens to do her on account, or by the use of said paper.

"That the defendant is insolvent and unmindful of the rights of the plaintiff, and capable on account of said facts of doing plaintiff considerable harm, and to putting her to considerable expense, if he is permitted to hold and use said paper, which, on its face, appears to be valid, and which was obtained by fraudulent and false pretenses and representations in the manner hereinbefore stated.

"That said paper is actually null and void, and should be so declared by this court in furtherance of justice and right, as between plaintiff and defendant.

"Wherefore, plaintiff prays this court for an order and injunction, enjoining and restraining defendant from making any use whatever of said paper, and from prosecuting any action thereon against her. That the defendant be and by the order and decree of this court compelled to produce said paper in court and that paper be by this court declared null and void, and for other and proper relief."

A demurrer interposed by defendant to the foregoing petition having been overruled, he filed an answer thereto, setting up the contract recited therein and alleging that he had performed his obligations thereunder and that plaintiff was seeking to avoid the obligations imposed upon her by that agreement, and that she and one Frank C. Barrington, by false representations, induced the defendant to deliver to the said Barrington, the policy of insurance in plaintiff's favor upon the life of her husband, which defendant had heretofore received for the purpose of performing his part of the contract with plaintiff, and that having secured the possession of the pol-

icy in this way, the said Barrington, acting for plaintiff, refused to return and deliver the same to the defendant for the purpose of further preventing him from receiving that portion of the proceeds thereof which he would have been entitled to under his aforesaid contract with plaintiff; that plaintiff at the time well knew defendant had procured said insurance company to recognize the validity of said policy for its full amount, despite the fact that it was under no obligation to pay the same.

The reply of the plaintiff to this answer was, to-wit: "Now comes the plaintiff, and for reply to defendant's answer herein, denies each and every allegation of new matter therein contained.

"The plaintiff for further reply to said answer states that when the defendant fraudulently induced her, in the manner and by the means stated in the petition, to sign said alleged contract, she was by the defendant in the same manner, and by the same means by which she was induced by him to sign said contract, fraudulently induced to permit the defendant to take possession of said policy of insurance, and the defendant did then receive said policy of insurance from the plaintiff. Thereafter, and before this suit was instituted, this plaintiff, or as soon as she ascertained that the defendant had deceived, misled and attempted to defraud her, as alleged in the petition, obtained possession of said policy from the defendant.

"Plaintiff further alleges that she demanded, received and obtained said policy from the defendant at said time in order to prevent him from carrying out his design to cheat and wrong her, as alleged in the petition.

"Having fully replied to defendant's answer, the plaintiff renews her prayer for relief as made and contained in her petition."

The court rendered a decree in accord with the prayer of the petition. The defendant has brought the record proper to this court, upon an appeal allowed him by one of its judges.

*Tenbroek, Spooner, Sullivan & Walsh* for appellant.

(1) On the face of the petition, respondent's right to rescission and a consequent cancellation by a court of equity was barred by her laches in seeking such relief. Dougherty v. Stamps, 43 Mo. 243; Landrum v. Bank, 63 Mo. 48; Bliss v. Prichard, 67 Mo. 181, 186; Burgess v. Railroad, 99 Mo. 496. (2) The petition disclosed no equity because there was neither an allegation that appellant had performed no services of value under the contract, nor an offer to pay for any such as might have been rendered, one or the other of these allegations being absolutely essential in a bill to cancel for fraud in procuring a contract. Brockhaus v. Schilling, 52 Mo. App. 73; Jarrett v. Morton, 44 Mo. 1. c. 277; North v. Stevenson, 71 Mo. App. 427. (3) And courts of equity do not enjoin the prosecution of actions at law on the ground of fraud connected with the subject-matter of the action, for the reason that the issue may be presented to the law court. And the fact that the action is pending in a foreign jurisdiction does not change the rule. Payne v. O'Shea, 84 Mo. 129; Murphy v. De France, 101 Mo. 151.

*James W. Boyd, John H. Boogher* and *Joseph Morton* for respondent.

(1) Courts of equity have jurisdiction in all cases wherein deeds, conveyances, judgments, contracts or even releases or receipts are obtained by fraud. Blair v. Railroad, 89 Mo. 392; Nelson v. Betts, 21 Mo. App. 231; Stewart v.

Caldwell, 54 Mo. 539; Baldwin v. Davidson, 139 Mo. 126; Griffith v. Tomley, 69 Mo. 19; Dailey v. Joseph, 72 Mo. 145; Dingle v. Pollick, 49 Mo. App. 484.   (2)   In a large class of cases, where fraud constitutes the gist of the complaint, equity and law courts have concurrent jurisdiction and the fact that there may be a remedy at law in nowise abates equity jurisdiction.   Blair v. Railroad, 89 Mo. 383; 8 Encyclopaedia of Law, p. 651; Gerard v. Car Wheel Co., 46 Mo. App. 75; Och v. Railroad, 130 Mo. 27.   (3)   "The action of injunction may be resorted to, notwithstanding there may be an adequate remedy at law for the injury, in all cases where an adequate remedy can not be afforded by an action for damages as such."   The petition shows that the defendant was insolvent and hence an action in damages at law would have been fruitless.   Jones v. Williams, 139 Mo. 37; Bank v. Kercheval, 65 Mo. 688.

BOND, J.—The elements of equity set forth in plaintiff's petition are the fraudulent obtention by defendant of a contract signed by her, empowering him to collect certain insurance policies in her favor upon the life of her deceased husband, for the consideration to defendant of one-third of the proceeds of such collections; the allegations that defendant intentionally deceived her by his misrepresentations as to the validity of the policy in her favor, issued by a New Jersey company; as to the fact that he was an employee of said company, and as to other circumstances relating to his personal fitness for the rendition of service to her in the matter.   And further, that he also used the contract so fraudulently procured as the basis of a suit against plaintiff in the State of New Jersey, wherein an attachment has been levied upon her property in that State, and that the retention of said contract by him has caused plaintiff to be garnished by certain creditors of his

who have brought actions against him in this State upon the theory that he was entitled, by virtue of said contract, to moneys from plaintiff. The petition further alleges the insolvency of the defendant.

The relief prayed for is an injunction against the prosecution of any actions against plaintiff on said contract in New Jersey, and its surrender for cancellation.

Unquestionably the foregoing matters present a case for equitable cognizance. Courts of equity of ancient right, have assumed concurrent jurisdiction with courts of law in matters of fraud, accident or mistake, nor are they prevented from the exercise of full jurisdiction under these several heads, unless a full, complete and adequate remedy could be had at law. In addition to the right to administer relief in the case at bar, on the ground of fraud, the facts stated in the petition make out a clear case for the administration of remedies peculiar to courts of equity, namely, cancellation of a frudulent contract, reasonably calculated while in the hands of the defendant to harass, annoy and injure the plaintiff, and an injunction against the prosecution of suits in this State and elsewhere, based upon said contract.

The theory of the learned counsel for appellant, that respondent should be relegated to her defenses of the actions at law brought against her by appellant in New Jersey and by his creditors in Missouri, as a full measure of relief for the obtention by appellant of the contract upon which said actions are based, is quite untenable. In the nature of things, she would be subjected to the annoyance, in so doing, of merely resisting the enforcement of such contract in different forms and in different suits, which might be multiplied to a degree harassing and expensive in the extreme. Besides, by merely *legal* defenses, she would in no instance secure the surrender and cancellation of the fraudulent contract, which

would be a fruitful source of mischief while in the hands of the defendant. It is evident, therefore, that her remedies at law could not be full, complete and adequate, in the sense attached to those terms, as depriving a court of equity of the right to exercise jurisdiction in matters concurrently within the jurisdiction of courts of law. Even if it be conceded that she could set up the fraud practiced by defendant in the procurement of the contract in the actions brought thereon at law, such a remedy on her part would only be partial and would not go to the full extent of establishing her right to a decree cancelling the instrument evidencing the contract and enjoining the defendant from making it the subject of actions at law in which he might obtain an unfair advantage by abusing the process of the courts in directing its machinery against plaintiff or her property. Stewart v. Caldwell, 54 Mo. 536; Pratt v. Clark, 57 Mo. 189; Bank of Commerce v. Chambers, 96 Mo. loc. cit. 467; Baldwin v. Davidson, 139 Mo. loc. cit. 126; Morgan v. Pump Co., 74 Mo. App. 155; Bispham's Principles of Equity (6 Ed.), sec. 200; Lindley v. Russell, 16 Mo. App. 217; Damschroeder v. Thias, 51 Mo. 100; Bresnehan v. Price, 57 Mo. 422.

II. There are other minor points suggested in argument by appellant's counsel which do not, in our opinion, reach the merits of the case, in view of the fact that the pleadings and record proper, which are the only matters presented for review on this appeal, show beyond question that the cause of action was one proper for equitable cognizance and redress, and that the decree of the lower court did not transcend the scope of relief presented by the pleadings. The result is that it is affirmed. All concur.