STATE OF MISSOURI EX REL. CENTRAL STATES LIFE INSURANCE COMPANY, A CORPORATION, RELATOR, v. HON. ROBERT W. MCELHINNEY, JUDGE OF THE CIRCUIT COURT, DIVISION No. 4 OF THE COUNTY OF ST. LOUIS, MISSOURI, RESPONDENT.—90 S. W. (2d) 124.

St. Louis Court of Appeals. Opinion filed February 4, 1936.

*Jones, Hocker, Gladney & Jones* for relator.

*A. H. Kerth* for respondent.

McCULLEN, J.—This is an original proceeding in which relator, Central States Life Insurance Company, seeks to prohibit respondent, Judge of the Circuit Court of St. Louis County, from keeping in force or enforcing a temporary injunction enjoining relator from foreclosing certain deeds of trust on property owned by the Pearl Realty & Investment Company, and to prohibit respondent from keeping in force or enforcing orders appointing a receiver to collect rents on said property and enjoining relator from interfering with said receiver in the collection of said rents.

A preliminary rule in prohibition was issued by this court and

the service thereof was waived. In due time respondent filed his return and the cause is before us on the issues of law raised and the facts admitted by the pleadings herein.

The Pearl Realty & Investment Company, a Missouri corporation, is the owner of certain improved real estate in the City of St. Louis, hereinafter called city property, and also owns certain improved real estate in St. Louis County, hereinafter called county property.

On April 1, 1924, relator made a loan to the Pearl Realty & Investment Company in the sum of $90,000, which was evidenced by two principal notes, one for $30,000, due April 1, 1927, and the other for $60,000 due April 1, 1929, which, together with interest notes, were secured by a deed of trust on the city property.

On January 17, 1927, relator made another loan to the Pearl Realty & Investment Company in the sum of $90,000, which was evidenced by five principal notes, four of them being for $10,000 each, maturing respectively in one, two, three and four years after January 17, 1927, and one for $50,000 due five years after said date, which, with interest notes, were secured by a deed of trust on the county property mentioned.

Partial payments were made by the Pearl Realty & Investment Company on account of the principal and interest on said loans, which were thereafter combined in two principal notes and renewed and extended by relator from time to time. On July 1, 1933, there became due and payable to relator the sum of $51,500 on account of the unpaid balance of the principal note secured by the deed of trust on the county property. On the same date there became due and payable to relator the sum of $64,500 on account of the unpaid balance of the principal note secured by the deed of trust on the city property. These balances were not paid on their due date.

On July 25, 1933, relator and the Pearl Realty & Investment Company entered into a written agreement, containing an assignment of rents of said property, whereby the time for the payment of the unpaid balance of the principal notes secured by the deeds of trust on the county and the city property was extended from July 1, 1933, to July 1, 1934. The agreement mentioned will be referred to hereinafter as the rent assignment agreement.

The balance of $64,500 due on the principal note secured by the deed of trust on the city property was not paid when it became due on July 1, 1934, and in January, 1935, relator took steps to sell that property under the deed of trust, the date of the sale being set for February 2, 1935.

On February 1, 1935, the Pearl Realty & Investment Company filed a suit in the Circuit Court of St. Louis County against relator and the trustees named in the deeds of trust on the city and county property. Tenants occupying the property were joined as defendants in the suit. Said suit was assigned to Division No. 4, of

the Circuit Court presided over by respondent herein, and was docketed as Cause No. 114,480 therein.

The petition of plaintiff in the aforesaid suit alleged, among other things, that on or about July 1, 1933, relator (defendant in said suit) agreed to extend and renew the time for payment of the balance of said principal notes upon condition that plaintiff would, on or before November 20, 1933, pay certain delinquent items of taxes and interest; that relator, through its officers and agents, requested plaintiff to execute rent assignments whereby plaintiff agreed that until said delinquent items amounting to $8265.09 were paid, the rentals from said property should be paid to relator; that relator, through its officers and agents, represented and stated to plaintiff that upon payment of said delinquent items on or before November 20, 1933, said assignments of rents would be cancelled and become void and ineffective, and that plaintiff could thereafter receive and collect said rents for the purpose of accumulating funds to pay the principal, interest and taxes thereafter to become due and payable on said property; that, relying upon said statements and representations, plaintiff caused to be executed the rent assignment agreement which had been prepared by relator.

The petition of plaintiff in said suit further alleged that on November 20, 1933, plaintiff had paid to relator in full the balance of its delinquent obligations amounting to $8265.09 in accordance with said rent assignment agreement, and that on said date there were no delinquent items nor were either of the obligations secured by the deeds of trust on the property mentioned in default in any manner, and that said rent assignment agreement thereby became void and ineffective; that on July 1, 1934, it offered to pay to relator the total amount of the principal and interest owing under its obligation secured by the deed of trust on the county property, and that relator stated it would accept said payment but would demand and collect the rentals accruing from said property until the obligation secured by the deed of trust on the city property had been fully paid and satisfied; that relator thereupon wrongfully and unlawfully notified and made demand upon all the tenants of the plaintiff occupying said city and county property not to pay the rent to plaintiff nor to any other person except relator or its duly designated agent or representative.

The petition of plaintiff in said suit further alleged that as a result of the wrongful acts, conduct and interference on the part of relator, plaintiff had been rendered unable to refinance either of deeds of trust and had been wrongfully and unlawfully prevented from collecting rents owing from its tenants, and thereby prevented from discharging the obligations owing by it to relator. It was also alleged by plaintiff in said suit that by reason of the wrongful demand made by the relator upon the tenants of the plaintiff,

numerous suits had been brought and were then pending in the City of St. Louis and County of St. Louis involving the claims of the plaintiff and the relator to the rents owing by certain of said tenants; that the amounts of rents from said property collected by the relator were unknown to plaintiff, and that relator refused to advise plaintiff of the amounts so received, or give plaintiff credit therefor on plaintiff's indebtedness and obligations.

The petition of plaintiff in said suit further alleged that relator had caused notice to be published that the city property would be sold at public sale on February 2, 1935, under the deed of trust and that relator had given notice of its intention to institute foreclosure proceedings under the deed of trust on the county property.

Plaintiff in said suit asked the court to determine the issues and to order relator to render an accounting of all the sums collected by it from the tenants of plaintiff, and to credit plaintiff with such amount; that the court appoint a receiver to collect the rents from said tenants, to hold and preserve the same until the further order of the court; that relator, its officers, agents and attorneys, be enjoined from appointing a successor trustee under the deed of trust on the county property, or in any manner proceeding to foreclose under the provisions of either of said deeds of trust, and that in the meantime a temporary restraining order be granted; that upon a hearing on the merits, the rent assignment of July 25, 1933, be decreed void and ineffective as of November 20, 1933.

Upon the filing of the petition, respondent judge issued a temporary restraining order and an order requiring relator to show cause why a temporary injunction should not be granted and a receiver appointed. On February 6, 1935, relator filed its return to the order to show cause, alleging that plaintiff's petition did not state a cause of action warranting either the issuance of a temporary injunction or the appointment of a receiver. Relator alleged therein that its agreement to extend the time for the payment of the balance due under the principal notes from July 1, 1933, to July 1, 1934, was conditioned upon the assignment by the plaintiff therein to the relator of the rents which would thereafter accrue on said property as additional security for the payment of the balance due and owing to relator by plaintiff on said principal notes, and also as security for the payment of the additional sum of $8265.09 owing by the plaintiff to the relator as past due interest on said principal indebtedness and the taxes assessed against said property which plaintiff had failed to pay and which relator had to pay, and that it was not true, as plaintiff alleged, that said assignment was given solely as security for the payment of said sum of $8265.09; that plaintiff failed to pay the balance due on said principal notes on July 1, 1934, or any part thereof; that relator, in reliance upon statements of plaintiff that it would refinance or pay off a sub-

stantial part of said indebtedness, withheld foreclosure of the deeds of trust securing same and deferred exercising its rights under the assignment of rentals until it became apparent that plaintiff was making no effort to refinance said indebtedness; that in November, 1934, relator notified the tenants of said property of the assignment to it by plaintiff of the rentals therefrom and demanded that future rentals be paid to relator; that many tenants refused to pay rentals to relator, and relator was compelled to institute numerous proceedings to recover said rentals; that some of said tenants had paid and were still paying rentals to relator with the express understanding that relator would indemnify them against loss by reason thereof; that relator had collected as rentals a total sum of $2175. Relator set forth in its return an itemized statement showing the names of the tenants, the amounts collected from each and the dates thereof.

After a hearing in said cause, respondent found, among other things, that in July, 1933, relator agreed with plaintiff to extend the time for the payment of the principal indebtedness secured by each of the deeds of trust from July 1, 1933, to July 1, 1934, upon condition that plaintiff would execute an agreement whereby certain rents on both properties would be assigned to secure payment to the relator of items of interest and taxes amounting to $8265.09 which were due and payable on said July 1, 1933, and that said amount of $8265.09 was to be paid to relator on or before November 20, 1933. The respondent further found that upon said occasion in July, 1933, relator, through its officers or agents, represented to plaintiff that upon the payment on the aforesaid sum of $8265.09 to relator on or before November 20, 1933, said rent assignment would become void, and that with such understanding plaintiff executed said rent assignment on July 25, 1933.

Relator contends that the rent assignment agreement of July 25, 1933, whereby it extended for one year the date for the payment of the principal sums due on July 1, 1933, was intended to continue in force and effect until all of the obligations of plaintiff under both deeds of trust had been fully paid and satisfied, whereas plaintiff contends that the rent assignment was intended to cover only the delinquent interest and taxes amounting to $8265.09, and was to become void on November 20, 1933, when plaintiff paid to relator the balance of said sum of $8265.09.

The rent assignment agreement described the property and states the ownership thereof by second party (plaintiff) and also sets forth the unpaid balance of the principal sums, and refers to the deeds of trust securing same, in the amounts which we have heretofore stated. It recites that said amounts of indebtedness became due on July 1, 1933, and have not been paid; that there was also due and payable by plaintiff to relator on July 1, 1933, with in-

terest to that date, the sum of $8265.09 as unpaid interest plus 1932 taxes on said property. It is recited therein that second party (meaning plaintiff) has requested a further extension and that first party (meaning relator) "has agreed to such extension provided it is given additional security in the form of assignment of rents," after which it is recited that in consideration of the sum of $1.00 and in further consideration of said assignment, "First Party hereby agrees that the time for the payment of the balance of the principal of said loans shall be and is hereby extended to July 1, 1934, which principal sum shall bear interest from July 1, 1933, until said extended maturity and 8% interest thereafter; and that the time for the payment of balance of said mortgage indebtedness, that is to say the sum of $8265.09 (being the accrued unpaid interest on said loan and taxes advanced as aforesaid), plus 6% interest thereon from July 1, 1933 shall be extended so that the same shall be paid in installments as follows: . . ."

At this point in the agreement the dates for payment of the installments and the amounts thereof totaling $8265.09 are set forth, concluding that part referring to said installments as follows: .

"And the balance of $679.30 plus accrued interest on or before November 20, 1933."

The agreement then proceeds with the part thereof covering the actual assignment of the rents as follows:

"As inducement to First Party granting the within extension and as part of the consideration thereto, Second Party hereby assigns and transfers to First Party all right, title and interest in and to all leases on said properties, itemized schedule of which is hereto attached, and in order to fully carry out the intent of this agreement, Second Party hereby makes, constitutes and appoints First Party its true and lawful attorney in fact, for it and in its name and stead, to demand, receive and collect all moneys or rental payments now due or to become due by virtue of said leases. . . . Provided, however, that First Party shall apply all rental payments received by it to the credit of Second Party on account of the aforesaid indebtedness; . . .

"It is expressly agreed that nothing contained herein shall be to impair the security for said indebtedness or the lien of said deeds of trust or to affect or impair any rights or powers which First Party may have under said notes and deeds of trust further than herein set forth, it being the intention of this agreement to extend the time of payment of the sums now due, as aforesaid, without changing the rights under the original loan papers in any other respects. . . ."

The rent assignment agreement proper does not state the length of time it is to continue in force, but the itemized schedules specifically referred to therein must be taken into consideration in construing

such agreement. The itemized schedules were attached to the original rent assignment agreement and were offered in evidence at the hearing before respondent. These schedules clearly show that the rent intended to be covered was limited to four months following the date of the execution of the rent assignment agreement. This made said rent assignment void when the last installment of $679.30 was paid "on or before November 20, 1933."

Courts cannot properly change, and, of course, should not attempt to change a contract made by the parties, but it is the duty of courts to construe contracts, and when they are ambiguous, any doubt as to their meaning should be resolved against the drawer thereof. [Sandbrook v. W. L. Morrison Inv. Co., 209 Mo. App. 600, 239 S. W. 543.]

Another rule applicable in this situation is that where an instrument is referred to in a contract as constituting a part thereof, the contract will be so construed. [Swinney v. Connecticut Fire Ins. Co. (Mo. App.), 8 S. W. (2d) 1090.]

Applying these rules we are of the opinion that respondent judge was warranted in holding that the action of relator in demanding and collecting rents from plaintiff's tenants under an erroneous construction of the rent assignment agreement was wrongful, and that the issuance of a temporary injunction to restrain relator from the collection of further rents as well as to prevent a multiplicity of suits with respect to the collection of said rents, and the necessity for an accounting by relator to plaintiff for the rents already wrongfully collected by relator were matters within the equity jurisdiction of the court and authorized by the pleadings. The question of the sufficiency of the evidence to sustain respondent's action is, of course, not for us to determine in this prohibition proceeding as we are here dealing only with the question of jurisdiction. Furthermore, it appearing from the record herein that the parties were in dispute as to which was entitled to collect the rents in the future, we think it was within respondent's discretionary power and authority, as auxiliary and incidental to the main cause, to appoint a receiver to collect said rents and to hold the same until such time as the court could finally determine to whom they rightfully belonged. [Stark v. Grimes, 88 Mo. App. 409; Commonwealth Finance Corp. v. Missouri Motor Bus Co. (Mo.), 233 S. W. 167.]

The general rule applicable here is stated under the title "Equity" in 21 C. J., page 77, paragraph 50, as follows:

"The jurisdiction has also been extended to a distinct class of cases, where a complexity of controversies arising out of the same contract or transaction would require several actions at law for entire relief; in such cases equity may take jurisdiction and adjust all the controversies so connected in one suit."

The fact that plaintiff had a remedy at law for the wrongful acts

of relator in collecting said rents did not deprive the court of jurisdiction to issue its temporary injunction because it is apparent without argument that such a remedy at law would not be adequate. Relator had declared its intention to continue collecting the rents, and plaintiff would have been required to bring many suits at law to enforce its right to receive said rents. The rule is that equity will assume jurisdiction whenever a legal remedy is inadequate and the situation or condition is such that equity can give more complete, efficient, prompt and practical relief. [Broadway Bank v. Schlater (Mo. App.), 17 S. W. (2d) 591; New York Life Ins. Co. v. Cobb, 219 Mo. App. 609, 282 S. W. 494; Barrington v. Ryan, 88 Mo. App. 85.]

We, therefore, hold that the respondent did not exceed his jurisdiction as judge of the circuit court in issuing the temporary injunction enjoining relator from collecting said rents and appointing the receiver to collect and hold the rents subject to the further order of the court. It follows that the order enjoining relator from interfering with said receiver during said period was not in excess of the court's jurisdiction.

Coming now to the action of respondent in issuing the temporary injunction restraining relator from selling the property or offering it for sale, we are of the opinion that such action was in excess of the jurisdiction of the court.

Even though relator was mistaken as to its rights under the rent assignment agreement, we find nothing either in that assignment or anywhere else in the record herein that could be held to cancel or affect relator's right to foreclose and sell the property. The rent assignment agreement expressly states that "nothing contained herein shall . . . affect or impair any rights or powers" of relator under the deeds of trust.

Relator's wrongful collection of the rents and its threat to continue in that course were proper subjects for equitable interference to prevent such wrongful conduct but did not constitute grounds for interference with relator's rightful exercise of the powers given to it under the deeds of trust to sell the property after plaintiff's default in payment. It is admitted that there was a default in the payment of the balance of $64,500 due on July 1, 1934, on the principal notes secured by the deed of trust on the city property and that in January, 1935, at the time of the publication of the notice of sale of said property, that balance had long since been due and had been in default for more than six months. It is also conceded that the balance of $51,500 of the principal note secured by the deed of trust on the county property was unpaid and had been in default for the same length of time.

In view of this state of facts relator had a clear right, under the admitted terms of the deed of trust, to sell the property at public

foreclosure sale unless by its own wrongful acts before the maturity of the principal notes relator had made it impossible for plaintiff to meet said obligations. The only allegation in the record charging relator with any such acts is plaintiff's charge that relator's wrongful action in demanding that the tenants pay relator the rents, and relator's collection of the rents from the tenants prevented plaintiff from refinancing the indebtedness. The record shows that relator, at the time of its return to the order to show cause on February 6, 1935, had collected only $2,175 in rentals from the property. At the time of the issuance of the temporary injunction on June 24, 1933, these rent collections amounted to $5285, which, relator alleges, were applied to accrued interest on the indebtedness, leaving $475 to apply on the unpaid principal total of $116,000. These allegations are not denied by plaintiff. We are unable to see how the collection of such a relatively small amount by relator prevented plaintiff from refinancing its admitted indebtedness to relator amounting to the far greater sum of $116,000. Furthermore, plaintiff had ample time, even after its default, to refinance the loans before relator asserted its claim to the rents, but did not do so. There is no charge that relator in any manner other than by its actions in connection with the collection of rents interfered with or prevented plaintiff from refinancing its indebtedness to relator. If the amount of rents collected by relator had been sufficient to pay plaintiff's indebtedness we would then have a different situation.

The case of Glines v. Theo. R. Appel Realty Co., 201 Mo. App. 596, 213 S. W. 498, is relied on by respondent with respect to the enjoining of the foreclosure sale pending an accounting between the parties. We believe that case is not applicable on that point to the facts in the case at bar. In that case a rent assignment was given as additional security for the payment of an indebtedness secured by a deed of trust, but an examination of the opinion in that case shows that it was expressly alleged in the petition in the suit to enjoin the foreclosure of the deeds of trust therein that the amounts of the rents collected by the defendant under such assignment, together with other payments which had been made on account of the indebtedness, were more that sufficient to pay off the indebtedness. At the hearing in that case on the motion to dissolve the injunction which had been issued, the plaintiff therein sought to show that the amounts collected by the defendant under the rent assignment, with the other payments mentioned, exceeded the amount of the principal indebtedness, but the trial court ruled that he would not be permitted to make such a showing. It was because of that ruling that the action of the trial court in dissolving the injunction in that case was reversed.

It is obvious, therefore, that instead of being authority support-

ing respondent's action in enjoining the foreclosure involved herein, the case really supports the contention of relator herein. There is nothing in the record in the case at bar to show that plaintiff contends, or ever contended, that relator herein had collected a sufficient amount of rents to pay off the indebtedness amounting to $116,000 owed by plaintiff to relator.

From the foregoing review of the record herein, we are satisfied that plaintiff's petition in the suit in the circuit court did not state facts warranting respondent judge in enjoining relator from proceeding with the foreclosure sales under the terms of the deeds of trust, and we are of the opinion that prohibition is a proper remedy insofar as that feature of the case is concerned. [State ex rel. Hog Haven Farms, Inc., et al. v. Pearcy, Circuit Judge, 328 Mo. 560, 41 S. W. (2d) 403; State ex rel. Castlen v. Mulloy, 331 Mo. 776, 55 S. W. (2d) 294.]

The temporary injunction restraining relator from collecting the rents and the appointment of a receiver to collect and hold same until the further orders of the trial court upon an accounting by relator as to the rents which it collected, as well as the order enjoining relator from interfering with the receiver in such collections, are in no manner inconsistent with relator's right to foreclose and sell the property under the deeds of trust. Relator's right to foreclose under the deeds of trust is separate and distinct from any question involving the rents issuing from the property under the facts pleaded herein.

Our preliminary rule heretofore issued is, therefore, quashed and discharged in all respects except as to the temporary injunction enjoining relator, its officers, agents and attorneys, and the trustee and successor trustee mentioned therein from selling or offering for sale the property described in said deeds of trust, in which respect our preliminary rule in prohibition is made absolute. *Hostetter, P. J.,* and *Becker, J.,* concur.