WEBB-BOONE PAVING COMPANY, a Corporation, Appellant, v. STATE HIGHWAY COMMISSION OF MISSOURI, Respondent.—No. 37993.— 169 S. W. (2d) 336.

Division Two, January 4, 1943.

Rehearing Denied, March 25, 1943.

*Igoe, Carroll, Keefe & Coburn* and *Ragland, Otto & Potter* for appellant.

*Raymond G. Barnett* and *Ralph M. Eubanks* for respondent.

WESTHUES, C.—Plaintiff company, under a contract with the State Highway Commission, constructed two bridges and excavated and graded .359 of a mile of roadway in connection with the construction of a subway in the city of St. Louis, Missouri, known as the "Express Highway". The dispute sought to be settled in this lawsuit involved the classification of approximately 7000 cubic yards of excavation made in connection with the work. The State Highway Commission contended that it should be classified as roadway excavation for which the plaintiff company bid forty-six cents per cubic yard, while plaintiff contended it should be classified as bridge excavation for which it bid $6.00 per cubic yard. The amount in dispute is approximately $40,000.00, plaintiff having been paid in full all that the Highway Commission claimed it owed. The case was tried before a court and jury resulting in a verdict and judgment in favor of the defendant, whereupon plaintiff appealed.

Plaintiff earnestly insists that this case involved the construction and interpretation of a plain and unambiguous contract and that that was a question for the trial court and not for a jury. Defendant Highway Commission insists it was entitled to a jury. We have reached the conclusion that plaintiff's position is well taken. However, defendant urges that its demurrer to the evidence should have been sustained. If that be true then of course the error, if any, of submitting the case to a jury would be harmless. It has frequently been held that if a question of interpreting a contract is submitted to a jury and the jury's interpretation is correct, then no harm results and the judgment entered pursuant to the verdict must be sustained. See 5 C. J. S. 1082, sec. 1760, where the rule is stated as follows:

"The erroneous submission of questions of law to the jury will not be ground for reversal where no prejudice resulted to appellant. Error in submitting a question of law to the jury is harmless where the jury decides the question correctly, as for instance where the jury correctly construes a written instrument, . . ."

It will be noted that many cases from various jurisdictions are cited in support of the rule, including cases from Missouri. Tate v. School Dist. No. 11 of Gentry County, 23 S. W. (2d) 1013, l. c. 1027 (13-15), 324 Mo. 477, 70 A. L. R. 771; Central Flour Mills Co. v. Gateway Milling Co., 213 S. W. 131.

▮ The contract of plaintiff included three main items: Removing or excavating all of the earth, rock and other substance for a distance of .359 of a mile for a roadway, including the grading thereof, and constructing a bridge at Kingshighway and also at Jefferson drive, which bridges were made necessary by reason of the construction of the subway. The Highway Commission asked for bids on these projects and plaintiff, previous to tendering a bid, received plans and specifications outlining the proposed improvements. These plans and specifications were admittedly a part of the contract. The Highway Commission contends that all excavation necessary for the construction of the subway should be classified as roadway excavation for which plaintiff bid forty-six cents per cubic yard; that thereafter all excavations necessary for the construction of the bridges should be classified as bridge excavation. Plaintiff on the other hand claims that bridge excavation for the Kingshighway structure includes the excavation necessary for the building of the bridge without reference to the necessary work of excavating for the roadway. In other words the bridge excavation included the digging of trenches for the bridge before the excavation for the roadway was done. The whole dispute in this lawsuit is centered around this point, but only with reference to the Kingshighway bridge.

Plaintiff relies strongly upon the general specifications wherein bridge excavation is defined as follows:

"Excavation for bridges shall include the removal of all material of whatever nature necessary for the construction of the structure in accordance with the plans or as directed by the engineer."

Another clause pertaining to this subject and relied upon by plaintiff concerns the method of measurement. The general specifications read as follows:

"All excavation will be measured in its original position by the cross-section method. The yardage of excavation paid for will be that actually removed, except that no payment will be made for material removed outside of an area which is bounded by vertical planes eighteen inches outside of the footings and parallel thereto."

If the subway had not been constructed there is no doubt that the 7000 cubic yards ▮ of excavation in dispute would have been classified as bridge excavation because it would have been necessary for the construction of the bridge. However, if no subway had been contemplated the bridge would have been unnecessary. It must be remembered that the plaintiff company had the contract to prepare the roadway necessary for the construction of the subway and

also the building of these bridges. The 7000 cubic yards of excavation in dispute were necessary in building the subway and were clearly within the definition of roadway excavation as outlined in the general specifications which read as follows:

"Roadway excavation includes the removal and satisfactory disposal of all materials, except those otherwise provided for, taken from within the limits of the roadway, and shall also include the excavating of special drainage ditches and the widening of roadway cuts as indicated or directed."

So we find that under the general specifications and excluding the plans and special provisions pertaining to this particular contract the excavation in dispute came within the definition of bridge as well as roadway excavation. We must, however, consider the plans and provisions in the special specifications applicable to this contract. Pertaining to the Kingshighway bridge a special provision reads in part as follows:

"Excavation and backfilling will be paid for at the unit prices bid, within the limits shown on the plans."

This provision must be kept in mind as it has an important bearing on this case. Note that it specifically refers the contractor to the limits shown on the plans. With reference to the excavation to be made for the Jefferson Drive structure a special provision provides as follows:

"Bridge excavation is to be in accordance with Section 1 of Standard Specifications issued April 1, 1930, except that quantities will be estimated below planes of finished roadway subgrade and side slopes as shown on sheet No. 1 of design plans. All excavation above these plans will be classified and paid for as Roadway Excavation."

Plaintiff argues that since the Kingshighway project is not covered by a special provision excluding from bridge excavation all excavations necessary for the roadway, as in the Jefferson Drive bridge, the disputed excavation at Kingshighway must be classified as bridge excavation. To this we cannot agree. The estimated quantity of bridge excavation for the Jefferson Drive bridge, as shown on the plans, is 900 cubic yards, and the estimated quantity for the Kingshighway bridge, which appears from the plans to be a larger structure, is 1600 cubic yards. Note here that plaintiff claims payment for over 7900 cubic yards at the Kingshighway structure. Plaintiff's bid recited the estimated quantity of bridge excavation at this point to be 1600 cubic yards. The actual amount as classified by the defendant commission and for which it was paid $6.00 per cubic yard was 1188 cubic yards. The undisputed evidence was that the length of the project was shortened and this accounted for the amount being far under the estimate. We are of the opinion that under the contract, plans and specifications, including the special provisions pertaining to the Kingshighway structure, the 7000 cubic

yards of excavation in dispute must be classified as roadway excavation. We shall set forth briefly a summary of why we have reached this conclusion. The yardage in dispute was plainly included and covered by the contract, plans and both general and special specifications as roadway excavation. The cross-section plans pertaining to the building of the subway specifically covered the excavation in dispute. Again, examine the special provision with reference to the Kingshighway structure which provided that:

"Excavation and backfilling will be paid for at the unit prices bid, within the limits shown on the plans."

The plans disclose the estimate on bridge excavation to be 1600 cubic yards. In connection therewith the design of the structure, as it appears on the plans, discloses the sub-structure of the bridge and the subway, which indicates that the roadway was to have been excavated. The plans at the Jefferson Drive structure call particular attention to the fact that all roadway excavation necessary to be done should be so classified. That of course called attention to the fact that the Highway Commission was not classifying any excavation necessary for the roadway as bridge excavation. Mr. Boone testified for the plaintiff company and stated that he personally inspected the site where the work was to be done and also examined the plans and specifications. The estimate of 1600 cubic yards of bridge excavation called attention to how the classification was to be made. This estimate was not overlooked because plaintiff entered it on its bid. There is nothing in the contract, specifications or plans that would indicate or even suggest that any excavation necessary for the construction of the roadway ▓▓▓▓ should be classified other than roadway excavation. On the contrary, as we have demonstrated, the cross-sections of the work pertaining to the building of the subway included all of the disputed excavation as roadway excavation. So did the designs on the plans and the estimated quantities. Looking at the situation from a practical standpoint we may ask, why should the excavation in question be classified as bridge excavation when it is clearly within the contract for the roadway excavation? Appellant says that the sequence of the work required it to first construct the Kingshighway bridge and that that made necessary the digging of trenches all the way from the original surface to a point below the proposed footings or foundation of the structure. We do not so read the contract. Note what the special provisions pertaining to this question provide:

"(1) The Contractor shall first be required to complete the west and the middle portions of the Kingshighway structure and open same to traffic.

"(2) The rough grading operations shall next be completed for the entire length of the project and shall be kept open to Contractors on subsequent projects for haul purposes along the Express Highway.

"(3) The Contractor shall then be permitted to complete the remainder of his work on this project, including the construction of the east portion of the Kingshighway structure and the structure at Jefferson Drive which must be constructed so as to provide passageway through the structures as well as over the remainder of the project."

These provisions required the contractor to so construct the Kingshighway bridge as not to interrupt traffic over the street. It was therefore provided that the west and middle portions of the bridge be constructed before commencing on the eastern portion. Nothing in this contract or in these special provisions prohibited the contractor from excavating down to the contemplated level of the roadway the space over which the western and middle portions of the bridge were to be constructed. In fact plaintiff did, through a subcontractor, remove about ten feet of the surface at this point and thereafter dug trenches to the depth required for the foundation of the bridge. In any event the manner in which plaintiff performed the work did not change the contract. If the sequence of the work rendered the roadway excavation more difficult at this point plaintiff should have taken that into account in making its bid on the entire roadway excavation work. We therefore hold that under the terms of plaintiff's contract the 7000 cubic yards of excavation were properly classified by the defendant commission as roadway excavation. In reaching this conclusion we have not overlooked the principle of law contended for by plaintiff, which is stated in its brief as follows:

"A contract must be construed most strongly against, and any doubt must be resolved against, the party who prepared it. State ex rel. Central States Life Insurance Co. v. McElhinney, 232 Mo. App. 107, 90 S. W. (2d) 124 (St. L. App. 1936); Burrus v. Continental Life Ins. Co., 225 Mo. App. 1129, 40 S. W. (2d) 493 (K. C. C. A. 1930); Belch v. Schott, 171 Mo. App. 357, 157 S. W. 357 (K. C. C. A. 1913); 13 C. J., pp. 544-545; 3 Williston, Contracts (Rev. Ed.), p. 1788, Sec. 621.

"The rule is applied to government agencies. Drainage District v. Rude, 21 Fed. (2d) 257 (C. C. A. 8, 1927)."

The judgment is affirmed. *Bohling* and *Barrett, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.