**BIG VALLEY, INC., and Lloyd E. Mitchell and Julia Mitchell, Plaintiffs-Appellants,**

v.

**FIRST NATIONAL BANK OF PULASKI COUNTY and Arthur B. Cohn, Defendants-Respondents.**

No. 10600.

Missouri Court of Appeals,
Southern District,
Division Two.

March 8, 1979.

Margaret Bush Wilson, Wilson, Smith, Wunderlich & Smith, St. Louis, for plaintiffs-appellants.

William C. Morgan, Waynesville, for defendants-respondents.

MAUS, Judge.

This is an action to enjoin a foreclosure under a power of sale in a deed of trust. The deed of trust was executed on February 2, 1970, to secure a note for $63,500.00 due on demand or 180 days. The petition was filed September 2, 1976, after publication of notice of the sale was commenced. As bases for the relief sought the amended petition in substance alleged: the plaintiffs were not in default; an agreement to accept installment payments; that a dispute existed between the parties concerning credits and the amount of the indebtedness. It was further alleged that among the credits not given to plaintiffs were the proceeds from four collateral transactions involving sums ranging from $5,000 to $22,500. The plaintiffs sought a restraining order, an interlocutory judgment for an accounting and a determination of the balance due, and a permanent injunction against foreclosure upon the basis of defendant bank's existing claims of default.

A restraining order was issued and the defendants ordered to show cause why a temporary injunction should not be granted restraining the foreclosure sale and directing the defendants to provide an accounting. On the day set for the show cause hearing the defendants filed a motion to dissolve the restraining order and an answer. On that day, the record shows that on the request of the parties "the matter is passed for resetting." The restraining order was continued upon an increased bond. Some four months later the case was called for hearing and both parties announced ready. There is now a dispute concerning whether this hearing was upon the order to show cause or upon the merits of the case. Nevertheless, the plaintiffs assumed the lead [1] and presented five witnesses and a host of exhibits principally pertaining to the issue of credits. These exhibits included schedules of payments provided plaintiffs by defendant bank in August before the scheduled foreclosure in September and 242

---

1. Such action is not conclusive that plaintiffs regarded the hearing to be upon the merits rather than the show cause order. *State ex rel.* *Eagleton v. Cameron*, 384 S.W.2d 627 (Mo. 1964).

receipts for payments. The defendants' only evidence was testimony pertaining to attorney fees. The matter was taken under advisement and five days later a judgment was entered dissolving the restraining order, awarding defendants $1,000 plus interest on the unpaid balance during the period of the restraining order and dismissing the petition. Plaintiffs appeal.

■ The unilateral, non-judicial exercise of a power of sale is a potent means for the enforcement of a security interest. It is capable of being used in an arbitrary and oppressive manner. On the other hand, it is a remedy agreed to by the parties to the security instrument. It is a recognized and useful device facilitating and lending stability to security transactions. The courts should interfere with the exercise of this remedy only under compelling circumstances, and then only upon such conditions that will protect the interests of the secured party.

A legitimate interest of the debtor is to know with reasonable certainty the amount of the indebtedness for which his property is to be sold. When there is a bona fide dispute as to a proportionately substantial amount of the indebtedness, a sale upon an excessive demand can be oppressive. For example, before the sale the debtor is entitled to pay the indebtedness and retain his property. If a substantially excessive sum is demanded, he may be unable to do so.

■ This does not mean that in every instance in which a debtor disputes the amount of the indebtedness he is entitled to a judicial determination of what is due before foreclosure. If the situation involves only a calculation of the application of payments to principal and interest, he may well be cast upon his own determination. But, circumstances may justify the stay of a sale

until such a determination is made. "A sale under the power may be enjoined where it appears that the amount of the debt is unliquidated, uncertain, in dispute, or only capable of ascertainment on a detailed and complicated accounting; but, where the amount due, although in dispute, is capable of ascertainment, a temporary, rather than a permanent, injunction should be granted." 59 C.J.S. Mortgages § 552, p. 895.

■ The evidence in this case concerning the amount due is far from satisfactory. Neither side presented a comprehensive summary of the debits and credits alleged to be involved. It may well be plaintiffs, as they contend in this court, regarded the hearing as a hearing upon the show cause order with an accounting to follow. While the hearing on the merits may be advanced and consolidated with the hearing upon the show cause order upon agreement[2] or notice,[3] the record before this court does not reflect the notice of the hearing in this case. For the proper procedure in this connection see *Adams v. Adams,* 294 S.W.2d 18 (Mo. 1956); *State ex rel. Eagleton v. Cameron,* 384 S.W.2d 627 (Mo.1964); *Bayer v. Associated Underwriters, Inc.,* 402 S.W.2d 11 (Mo. App.1966).

The determination of the balance of the indebtedness does involve a complicated accounting. This results from the following: the loan was a participation loan and two schedules of payments were maintained, with an initial entry of 50% of the loan for each participating bank. Payments were often allocated, with no adherence to an established pattern, between the two schedules. Mitchells had the loan in question (No. 1527), and at least two other loans with defendant bank. Receipts issued by defendant bank, with no established pattern, contained the loan number in question,

---

2. As in *State ex rel. Eagleton v. Cameron,* supra, the record in this case does not show an express agreement to such advancement. An implicit agreement was reached in *Frimel v. Humphrey,* 555 S.W.2d 350 (Mo.App.1977).

3. "As a prerequisite to the consolidation of the hearing on an application for a preliminary injunction with the trial on the merits of a

permanent injunction the parties must be informed that such action is contemplated, in order that they may have a clear opportunity to object or to suggest special procedures if a consolidation is to be ordered. The notice to the parties must be adequate and clear and unambiguous." 43A C.J.S. Injunctions § 226, p. 495.

one of the other loan numbers or more often no loan number at all. Further complications are involved because of the sales of portions of collateral which will be hereinafter mentioned.

There was evidence to lend some credence to plaintiffs' claim of excessive indebtedness as a bona fide dispute rather than such a claim being asserted for mere delay. From a cursory examination we are unable to correlate receipts bearing Loan No. 1527 totalling $600 with corresponding credits on the schedule of payments. On the other hand, we find many receipts bearing no loan number that correlate with credits on the schedule of payments. Mitchells' daughter correlated many receipts with other loans.

■ As stated, plaintiffs alleged four transactions in which their property was sold to third parties with the proceeds to be applied upon the loan in question. In their petition plaintiffs alleged two of these sales occurred in 1972. Before the hearing commenced, plaintiffs sought to amend the year in one instance to 1970 and the other to 1971. They were not permitted to do so and plaintiffs' tendered proof on those transactions was excluded as outside the scope of the pleadings. Since the total of credits upon the note is a principal issue, plaintiffs should be permitted to amend and show those transactions.

One of these transactions involved the sale of a tract of real property originally covered by the deed of trust in question. On January 29, 1971, this tract was sold for $11,000, paid in the form of a check for $7,500 and a trailer valued at $3,500 delivered to the then president of defendant bank. The consideration was to be applied on the note in question. The schedules of payments show credits of $2,369.54 on that day but no further entries which correlate with this sale. The other alleged transactions involved sales of construction equipment for amounts of $5,000, $8,500 and $22,500. Evidence was admitted concerning the latter sale. We find no credits on the schedules correlating with these transactions. However, we do find some rather large credits but they do not now appear to correlate with these transactions.

Further basis for the dispute is a letter from the auditor of defendant bank to Mitchell. This letter dated June 29, 1976, asked the Mitchells to verify that the balance of Loan No. 1527 was $16,057.86. The auditor had examined a ledger card or cards and not the schedule of payments. By its answer filed September 15, 1976, the defendant bank alleged the balance to be $31,-829.98. No explanation of the difference was offered.

It was essentially admitted on behalf of the plaintiffs that there was a balance on the note of approximately $16,000. The basis for the action of the trial court is not expressly set forth. It seems likely the petition was dismissed because it was established that there was a balance of some amount due upon the note. There is authority to support that position. *State ex rel. Central States Life Ins. Co. v. McElhinney*, 232 Mo.App. 107, 90 S.W.2d 124 (1936). Also see *Lackey v. Mitchell*, 14 N.C.App. 748, 189 S.E.2d 626 (1972).

However, there is authority to the contrary. "It will be seen that the learned trial court proceeded on the theory that in showing that there was an amount due on the notes under which the foreclosure was to be had, it was unnecessary to go into and take an accounting as between the parties covering all the receipts and expenditures and payments on account of the indebtedness. In this we are compelled to hold that the learned trial court was in error." *Glines v. Theo. R. Appel Realty Co.*, 201 Mo.App. 596, 213 S.W. 498, 499 (1919). Also see *Koslosky v. Bloch*, 191 Mo.App. 257, 177 S.W. 1060 (1915); *Farrell v. Seelig*, 27 S.W.2d 489 (Mo.App.1930); *Irving Bank & Trust Co. v. Second Land Corp.*, 544 S.W.2d 684 (Tex.Civ.App.1976).

■ In this case we are not called on to adopt either position. For in addition to the existence of a dispute involving a proportionately substantial amount and a complicated accounting, there is another reason that compels an accounting. The evidence

established that at least some of the consideration for the sale of portions of the collateral did reach the bank or its officers. In this respect the bank occupied a fiduciary relationship to the plaintiffs and is under a duty to account to plaintiffs for the application of such funds and property. 1 C.J.S. *Accounting* § 19, p. 655.

The defendants support the action of the trial court because there was no tender by the plaintiffs. Normally, a debtor should plead and prove a tender of the amount admitted to be due. *Farrell v. Seelig*, supra. However, plaintiffs' failure to do so is not fatal. "It was enough that they made the tender in court as soon as the amount was ascertained." *Koslosky v. Bloch*, supra, at 1062. Further, when Mitchell wanted to discuss the disputed amount with the bank, he was told the amount due was the bank's figure and there was nothing to discuss. A futile tender is not required. 86 C.J.S. *Tender* § 5, p. 559.

We are aware of Rule 83.13(c) requiring this court, if possible, to finally dispose of the case. However, upon the basis of the record we are unable to determine with any degree of accuracy the balance due on the indebtedness and the matter must be remanded. *Capoferri v. Day*, 523 S.W.2d 547, 558 (Mo.App.1975). This is possibly because both parties regarded the hearing as one upon the order to show cause. At least the defendant bank offered no evidence to explain any of the ambiguities raised. It may very well be that upon further proceedings the defendant bank will make such explanation and establish that the balance claimed is in fact correct.

By this decision we do not intend to establish that an accounting is a necessary prelude to a foreclosure sale every time a debtor disputes the amount of his indebtedness. Here, because the determination of that balance involves complicated calculations, the amount of the disputed indebtedness is proportionately substantial, there is some reasonable factual basis from which the plaintiffs could dispute the balance and because of the payment of plaintiffs' funds and property to the bank by third parties, we believe an accounting should be had to determine the balance due. Until that is done, the foreclosure for non-payment should be restrained upon such bond and conditions as will reasonably protect the interests of defendant bank. The judgment dissolving the restraining order and dismissing the petition is set aside and the cause remanded for further proceedings.

BILLINGS, P. J., and HOGAN, J., concur.