Joyce A. WHITE, Appellant,

v.

**MID-CONTINENT INVESTMENTS, INC., et al., Respondents.**

No. WD 41720.

Missouri Court of Appeals, Western District.

Jan. 23, 1990.

As Modified April 20, 1990.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 24, 1990.

Application to Transfer Denied June 19, 1990.

Joyce A. White, Kansas City, pro se.

Jeffrey S. Bay, Kansas City, for respondents.

Before NUGENT, C.J., FENNER, J., and WASSERSTROM, Senior Judge.

NUGENT, Chief Judge.

Plaintiff Joyce A. White appeals from the judgment of the trial court denying her petition for a permanent or temporary restraining order to prevent the defendant, Mid–Continent Investments, Inc. (MCI),

from foreclosing on the mortgage on her house and granting MCI's motion for a judgment on the merits without the presentation of defendant's evidence.

Ms. White contends that the court erred in accelerating the trial on the merits of Count V of her petition in conjunction with the hearing on her motion for a preliminary injunction; that it incorrectly applied the law in granting MCI's motion for a directed verdict; and that it erred in dissolving the existing temporary restraining order enjoining MCI from foreclosing.

We affirm the judgment of the trial court.

The facts of this case weigh heavily against Ms. White. Since 1976, she has borrowed on the strength of four mortgages on her house a total of nearly $130,000. She has defaulted on all four loans, and the accumulated balances due, penalties and late fees, back taxes, delinquent insurance payments, and attorney's fees that she owes total over $160,000. She and her husband, Delbert Jackson, have judgments of over $30,000 against them individually and jointly that appear as liens against the subject property. In addition, a Kansas jury has found her guilty of forgery.

In 1976, while still unmarried, Ms. White executed a $50,000 note and deed of trust in favor of Capitol Federal Savings for the purchase of a house. She avers that sometime after the execution of those instruments she married Mr. Jackson, although she has produced no evidence of the fact or date of the marriage. She further alleges that she notified Capitol Federal of her assent to Mr. Jackson's claim of title to a one-half share in the residence and of his assumption of one-half liability in the mortgage held by Capitol Federal, but produced no evidence to support those allegations.

In 1984, Ms. White defaulted on her payments to Capitol Federal. She maintains that the lender then gave her and her husband the option of paying at once the $5,729.08 in delinquent payments or refinancing the balance of the note at an increased rate of interest. At Capitol Federal's office, on November 5, 1983, Ms. White signed a "note endorsement" increasing the interest rate from eight and three quarters to thirteen percent, but she alleges that an officer there told her that the instrument would remain ineffective until her husband also signed. She also signed a cancellation notice and a Federal Truth–In–Lending Disclosure Statement stating that her monthly principal and interest payment as of December 10, 1983, would total $529.67, an increase of approximately $130 from her previous monthly payment of $394.50.

Ms. White testified that her husband, who did not testify, refused to sign the "note endorsement," preferring instead that they tender the delinquent payments and maintain the original interest rate, therefore, she gave Capitol Federal a cashier's check for $5,729.08 dated November 5, 1984. MCI denied that Capitol Federal gave Ms. White and her husband the optional ways of curing the default. Instead, the defendant asserts, Capitol Federal required that Ms. White cure the default by paying the delinquent balance and refinancing the note.

Capitol Federal's "Annual Home Loan Statement" to Ms. White, dated December 31, 1983, included in the heading the amount of her 1983 monthly principal and interest payment, $394.50. Ms. White also introduced into the record those year-end statements for 1984, 1985 and 1987, none of which contains in the heading any reference to the new monthly payments. Rather, each contains a hand-written notation that the "P + I", "Principal + Interest" or "Prin + Intrt" equalled $529.67, the amount, MCI maintains, equal to the monthly principal and interest payments under the terms of the 1984 "note endorsement." Moreover, none of the statements show clearly what she owed and what in fact she paid in interest and principal each month. The interest charges in 1985 totalled over $2,200 more, and those in 1987 over $1,100 more than did those in 1983.

In the spring of 1988, Ms. White again defaulted, and in a letter dated June 22, 1988, Capitol Federal advised her that unless she paid the delinquent amount due, $2,150.48, by July 5, it would begin fore-

closure proceedings on her house. On Saturday, July 9, Ms. White went to Capitol Federal and delivered to staff members a cashier's check for the amount due. An officer returned the check promptly the following Monday with a letter informing her that, because it had already begun foreclosure proceedings, Capitol Federal could not accept the check.

On July 12, Ms. White again sent the check and a long letter to Capitol Federal, which again returned her check. On July 19, the Kansas City *Daily Record* published notice of the commencement of Capitol Federal's foreclosure proceeding. On August 15, she filed suit (since then dismissed by the trial court) seeking to enjoin the foreclosure.

Within the next three days, Capitol Federal assigned to MCI Ms. White's 1976 note and deed of trust and the 1984 "note endorsement." That same month, Ms. White learned from Capitol Federal of the assignment to MCI. She also examined the record of the assignment in the office of the Jackson County recorder of deeds.

In addition, in a letter dated November 4, 1988, MCI informed Ms. White of Capitol Federal's assignment and invited her to cure the default by paying the total amount of the delinquency, $4,406.88, by November 14. In a letter dated November 17, 1988, she informed MCI that, because of her lawsuit against Capitol Federal, which she said the trial court had "erroneously dismissed," she would not pay the amount requested by MCI. She further stated that she deemed the assignment invalid. Having received no payment by November 14, MCI announced in the *Daily Record* on December 29, 1988, that it would sell the house at a foreclosure sale on January 5, 1989.

On January 5, Ms. White filed the instant suit, naming three defendants: MCI, Jeffrey Bay, MCI's counsel, who also serves as the trustee, and Capitol Federal.[1] On that date, after a short hearing, the trial court issued a temporary restraining order enjoining MCI's foreclosure.

On January 20, although it did not address other counts in her petition, the court took up and accelerated trial on the merits of Count V, which sought a permanent injunction against the foreclosure and a declaratory judgment that MCI had invalidly accelerated repayment on her note. The defendants moved that the court enter judgment without the necessity of their putting on evidence, and the court granted the motion. Ms. White then moved for either a reconsideration of the ruling or a new trial, and at a hearing on February 5 the court denied her motions. Ms. White appeals the judgment on Count V of the court.

At the hearing on January 20, the trial judge specifically announced and entered an order stating that he had denied Ms. White's request for a permanent injunction. Thus, he entered a final and appealable order. *Reproductive Health Services, Inc. v. Lee*, 660 S.W.2d 330, 339 (Mo.App.1983); *Bayer v. Associated Underwriters, Inc.*, 402 S.W.2d 11 (Mo.App.1966). The court in *Reproductive Health Services, Inc.*, at 339, noted a "jurisdictional line of demarcation" between decisions on permanent as opposed to temporary injunctions. Decisions on permanent injunctions occur after an adjudication of the merits of the case and, therefore, can be appealed; decisions on temporary injunctions do not involve a trial on the merits, and thus no appeal will lie. *Id.*

We review this case within the limitations imposed on appellate review by *Murphy v. Carron*, 536 S.W.2d 30 (Mo.1976) (en banc), which holds that the appellate court must affirm the trial court's judgment unless it erroneously declares or applies the law or no substantial evidence supports it or the weight of the evidence compels another result. *Id.* at 32.

■ In Ms. White's first point she argues that the trial court erred in accelerating trial on the merits of her prayer for a permanent injunction against MCI's foreclosure on her house because the defendants had not yet filed an answer with the court. She further argues that the court

---

1. At Ms. White's request, the court later dismissed Capitol Federal as a defendant.

erred in this acceleration at the hearing on January 20, 1989, because there she raised a timely objection to acceleration.

If at a hearing for injunctive relief the parties agree to accelerate a trial on the merits of the prayer for a permanent injunction, they may do so without the defendants' first filing an answer. *Pomirko v. Sayad,* 693 S.W.2d 323, 324–25 (Mo.App. 1985); *Big Valley, Inc. v. First National Bank,* 578 S.W.2d 616, 618 (Mo.App.1979). *Cf. Nelson v. Brentwood Condominium Ass'n,* 742 S.W.2d 233, 236 (Mo.App.1987). Evidence must exist, however, of at least implicit agreement between the parties and of an order of the trial court. *Nelson,* 742 S.W.2d at 236; *Pomirko,* 693 S.W.2d at 324–25.

Here, the record unambiguously shows that the parties agreed to and that the trial court ordered an acceleration at the hearing on January 20, 1989. Pertinent parts of the transcript read as follows:

MS. WHITE: Well I initially would like to clarify for the record that this is a hearing on my motion for preliminary injunction. I have not made a request to accelerate the trial on the merits with this hearing, and it's my assumption that the Court has not decided—

THE COURT: I'll do that now. We will accelerate it.

MS. WHITE: So it is the decision of the Court to accelerate it?

THE COURT: Yes, it will be the final decision, yes. The rule provides that the court may do that before the trial starts or during the trial. We almost always do it anymore. It saves having to try the same case twice.

MS. WHITE: All right. I need to get some exhibits marked.

After a recess for lunch, the hearing reconvened. Ms. White objected to the acceleration of the trial on the merits on the grounds that the defendants had not filed their answer and that her petition contained several complicated issues that required more time for resolution than the injunction hearing allowed.

THE COURT: Well I assume that all we're going to try today is the question of the injunction, isn't it?

MS. WHITE: I'm sorry. Maybe I misunderstood the court. I presumed you had accelerated the trial. . . .

THE COURT: Well, I have, but—

MS. WHITE: with this hearing.

THE COURT: Yes, but I assumed we were going to try the question of a preliminary injunction, but you—

MS. WHITE: OK.

THE COURT: Wait a minute, wait a minute.—but you were talking about other claims, and I had assumed all we were going to try today was that question of the injunction.

MS. WHITE: OK. I had misunderstood the Court then. I assumed you were accelerating the trial on all counts of the petition.

THE COURT: No. I don't remember what all the counts are. No. We'll just try the question of the injunction today.

MS. WHITE: OK. That's what I was getting ready to move for.

This exchange demonstrates beyond cavil that Ms. White agreed to the acceleration, an order that the court clearly announced and to which the defendants did not object. Thus, the parties agreed to the court's order for an acceleration. The absence of the defendants' answer became irrelevant.

Ms. White also argues that the court's decision on the merits of her claim at the hearing caused her prejudice because the defendants had not yet filed their answer. In support of this assertion, she cites *Gerding v. Hawes Firearms Co.,* 698 S.W.2d 605 (Mo.App.1985), a case not even remotely in point. *Gerding* addresses only the issue of improper service of process, a question not raised in the instant case.

■ In her second point, Ms. White argues that the trial court erred in granting the "defendant's motion for a directed verdict" because, she contends, no substantial evidence supported the court's finding that she had agreed to the 1984 "note endorsement" and because the defendants produced no evidence that disputed hers.

The trial court reviewed Ms. White's exhibits, including the "endorsement," the "disclosure statement," and the cancellation notice, all documents executing and explaining the increase in interest payments on her mortgage with Capitol Federal, and all bearing her signature. It properly found in them substantial proof of Ms. White's acquiescence in Capitol Federal's 1984 refinancing plan, which, as noted above, demanded both a lump sum payment and subsequent monthly payments at a higher interest rate.

■ The trial court also heard Ms. White's testimony and chose not to believe it. The court may do so and issue an adverse finding "even though the other party has offered no evidence." *Eyberg v. Shah*, 773 S.W.2d 887, 893 (Mo.App.1989). "The trial court is free to believe or disbelieve all, part or none of the testimony of any witness." *T.B.G. v. C.A.G.*, 772 S.W.2d 653, 654 (Mo.1989) (en banc).

Here, the trial court weighed the evidence and assessed the credibility of the witnesses. Moreover, in doing so, it correctly treated the defendant's motion for a directed verdict as a submission on the merits. *Wyrozynski v. Nichols*, 752 S.W.2d 433, 436–37 (Mo.App.1988).

In determining the sufficiency of the evidence, the appellate court accepts as true only that evidence favorable to the trial court's judgment and disregards all contrary evidence. *T.B.G. v. C.A.G.* at 654. Under this principle and the teachings of *Murphy v. Carron, supra,* based on Ms. White's second point, we find no ground for a reversal of the trial court's judgment.

■ She relies on six specific arguments to support her second point. *First,* she argues that because MCI does not hold her note and deed of trust as "a holder in due course" it took them with full notice of her legal defense, namely her pending suit against Capitol Federal. To this argument, MCI responds "So what?" We can find no better response.

"An assignee of a note and deed of trust is vested with all interests, rights and powers possessed by the assignor in the mortgaged property." *City Bank and Trust Co. of Moberly v. Thomas,* 735 S.W.2d 121, 122 (Mo.App.1987). A "holder" of a negotiable instrument may enforce payment of it, § 400.3–301 [2], as may a "holder in due course," § 400.3–305. Thus, holder in due course or not, MCI can enforce its claim under Ms. White's note and deed of trust unless she can assert legitimate defenses, which on this record she has not.

*Second,* Ms. White argues that §§ 400.3–407(1)(a)—(1)(c) and 400.3–407(2)(a) discharged her from performing her obligation on the note and deed because of the "fraudulent and material alterations to the 1984 'note endorsement.'" Whatever statutory protection she invokes, she has offered no evidence of alleged alterations.

*Third,* Ms. White argues that she unknowingly paid the increased payments to Capitol Federal after the 1984 refinancing of her loan. At trial, she led the trial court through a surreal account of why she had paid $394 monthly for several years and then paid nearly $530 monthly for several more years without realizing that something had changed in her payment schedule.

According to Ms. White, she did not know that her principal and interest payment had increased by nearly $135 after she had signed the "note endorsement" because her total monthly payment on principal, interest, taxes, and insurance frequently varied. She asserts this despite evidence of her assent to the increase provided in the refinancing documents and despite an over $1,100 increase in accumulated interest charges recorded on her 1987 annual statement. The trial court chose not to believe Ms. White's incredible contentions.

We note that at the top of the page the 1983 annual statement contains a breakdown of the total monthly payment into insurance, tax, and other payments, and includes the amount of interest and principal. None of plaintiff White's other three annual statements exhibits, that is, the

**2.** All sectional references refer to Revised Statutes of Missouri, 1986.

1984, 1985 and 1987 statements include the interest and principal amounts, and where that amount appears on the 1983 annual statement, we find in the other three documents only blank spaces. Moreover, even though at the bottom of the first page of the 1984 annual statement we find printed "CONTINUED ON NEXT PAGE," it does not include a second page.[3]

*Fourth,* Ms. White argues that her payment of $5,729.08 to Capitol Federal on November 5, 1984, constituted payment in full of her obligation on the property. The fact that she thereafter also began paying an increased monthly payment belies her assertion of having tendered full payment. Instead, the trial court found that Ms. White's lump sum payment brought the loan current as of the time of that payment; the "note endorsement" further obligated her, however, to make increased monthly payments.

■ *Fifth,* Ms. White argues that MCI's failure to record the assignment of the "note endorsement" precludes MCI's enforcement of the obligation under §§ 442.-380 and 442.400. At trial, the court correctly pointed out that those statutes governed only notice to potential buyers of real estate and did not affect the negotiability of notes.

■ *Sixth,* Ms. White argues that the absence of her husband's signature from the 1984 "note endorsement" renders that instrument void. We question Mr. Jackson's interest in this action, because he has not been joined as a party. Rule 52.04(a) requires joinder of any person who "claims an interest relating to the subject of the action" and whose absence may "impair or impede his ability to protect that interest." Moreover, Ms. White has offered no proof of her marriage, no proof of the date of marriage, no proof of her current marital status, and no proof of any grant of an interest in the real estate to Mr. Jackson.

■ Absent proof of alienation of a share of her property to her husband, Ms. White could have encumbered or even disposed of their residence without his permission, because a woman who acquires property while single retains sole control over that property after her marriage. *Travelers' Ins. Co. v. Beagles,* 333 Mo. 568, 574–75, 62 S.W.2d 800, 801–02 (1933), *Scott v. Scott,* 324 Mo. 1055, 1060, 26 S.W.2d 598, 600 (1930). *See also Herzog v. Ross,* 358 Mo. 177, 213 S.W.2d 921 (1948) (en banc). Accordingly, she also has the right, alone, to amend an encumbrance. Assuming, arguendo, that she shared ownership with her husband of property that she had acquired before marriage, we still find no bar to Ms. White alone agreeing to an increase in the monthly interest payment on a loan she had taken out before marriage upon that property. Ms. White remains responsible for the contracts she has made concerning her property. *Farmers' Exchange Bank v. Hageluken,* 165 Mo. 443, 451, 65 S.W. 728, 730–31 (1901); *Travelers' Ins. Co., supra,* 62 S.W.2d at 801–02.

Ms. White's next point asserts that the trial court erred in dissolving the temporary restraining orders thus allowing MCI to proceed with its foreclosure. She contends that she presented evidence sufficient to support her petition for injunctive relief. That evidence includes, we assume, all the allegations that we addressed above, such as Capitol Federal's "alteration" of the "note endorsement" and her ignorance of the increased monthly payments after the execution of the "note endorsement." As we have already said, no substantial evidence supports her position on the merits. The court thus correctly dissolved its previous order and allowed MCI to proceed with its foreclosure.

■ Finally, Ms. White maintains that the trial court erred in not ordering an accounting of her debt to MCI. Indeed, a debtor must receive an accounting where "there is a bona fide dispute as to a propor-

---

**3.** Although Ms. White placed in evidence the copies of the annual statements, upon our request for production of the originals of the statements, Ms. White has told this court that she has lost the original annual statements that Capitol Federal sent her and can produce only photocopies.

tionately substantial amount of the indebtedness." *Big Valley, Inc. v. First National Bank,* 578 S.W.2d 616, 618 (Mo.App.1979). *See also IPI Liberty Village Assoc. v. Spalding Corners Assoc.,* 751 S.W.2d 120 (Mo.App.1988).

Here, however, no doubt exists as to the amount of Ms. White's debt. MCI made that amount clear to her in its letter of November, 1988. Moreover, perusal of her payment schedule would inform Ms. White of the balance due on her loan.

 Rule 84.19 permits an appellate court to award damages to the respondent if it deems an appeal frivolous. A frivolous appeal presents no justiciable question and, on the face of the record, has no merit and thus holds little prospect for success. *Means v. Sears, Roebuck and Co.,* 550 S.W.2d 780, 789 (Mo.1977) (en banc). Moreover, appellants may perfect an appeal neither "in bad faith nor for vexation or delay." *Richey v. Meter Investments, Inc.,* 680 S.W.2d 381, 384 (Mo.App.1984).

In *Swanigan v. Crocket,* 713 S.W.2d 41 (Mo.App.1986), the court remanded for additional damages against a defendant whose appeal it deemed frivolous. The court held that the appeal asserted only that the trial court should have believed the defendant rather than the plaintiff and argued a point directly contradicted by the defendant's in-court admissions. *Id.* at 43. The fact situation in Ms. White's action resembles *Swanigan.* Ms. White basically argues that the hearing court erred in not believing her testimony rather than the facts contained in the evidence she herself adduced. Further, the record clearly rebuts the arguments in Point I of her appeal.

The record in this case presents a picture of studied and persistent dissemblance, the kind of misconduct that, as Judge Kennedy wrote in *IPI Liberty Village, supra,* at 123, "equity will not tolerate and delights to remedy." This appeal utterly lacks merit and constitutes an abuse of the process of this court and our system of civil justice. The plaintiff, a law school graduate of considerable ability, has robbed this court, the trial court and the defendants of precious time and money, asserting baseless claims smacking of fraud. By her aggression, she has apparently regularly backed down substantial financial institutions. This court will not be backed down or abide the abuse the plaintiff has heaped upon the administration of justice. We find that the plaintiff has willfully abused the right to appeal. Accordingly, sua sponte, we assess the costs of this appeal against her and an additional $1,000 in costs to be paid into the treasury of the State of Missouri, and damages in the amount of an additional $4,000 to be paid to the defendant MCI.

All concur.